

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-2004

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1624

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Zheng v. Atty Gen USA" (2004). *2004 Decisions.* Paper 526.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/526

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1624
_____

BAO DIAN ZHENG,

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

_____

On Petition for Review of a Final Order from
the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A72-563-323)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2004

Before: SLOVITER and FUENTES, Circuit Judges and POLLAK*, District Judge.

(Opinion Filed: July 6, 2004)
_____
* The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Petitioner Bao Dien Zheng entered the United States on or about November 11, 1991 and applied for admission with a passport that did not reflect his true identity or nationality. He was paroled into the United States to pursue an application of asylum, which he filed in 1992. Zheng is a native and citizen of the People's Republic of China. He claims that his wife was forcibly sterilized on December 7, 1984, after refusing an Intrauterine Device ("IUD") and bearing a second child in hiding. Zheng claims that because of his violations of birth control policy he was fined, lost his job and was threatened with detention.

After an interview on December 18, 1997, the Asylum Office found Zheng's story not to be credible, and on November 3, 1998, the INS commenced removal proceedings against Zheng. He was charged with being subject to removal under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 (a)(7)(A)(i)(I), as an alien who, at the time of application for admission, was not in possession of a valid entry document and a valid travel document. Zheng conceded removability, and his ineligibility for voluntary departure due to his status as an arriving alien, but renewed his application for asylum. Although the IJ found that Zheng's allegations established asylum eligibility under Matter of C-Y-Z-, 21 I & N Dec. 915 (BIA 1997), he found Zheng's testimony not to be credible and therefore denied him eligibility for asylum. The IJ also found that in light of the adverse credibility finding and the fact that Zheng did not present evidence sufficient to establish the probability that, if he were to return to China, he would be tortured, his application for protection under the Convention Against Torture ("CAT") should also be denied.

2

Zheng appealed to the Board of Immigration Appeals ("BIA"), arguing that the IJ's credibility finding was made in error, and that Zheng established eligibility for asylum, withholding of removal, and protection under the CAT. Zheng also filed a motion to remand his case to the IJ for readjustment of status. Although as an arriving alien, Zheng would ordinarily be ineligible to adjust status, he argued that he falls within the exception to the definition listed at 8 CFR § 1.1(q), which except aliens who were paroled into the United States before April 1, 1997, for purposes of INA § 235 (b)(1)(A)(I). The BIA affirmed the decision of the IJ, noting that Zheng was not credible. The BIA also denied Zheng's request for remand, finding Zheng to be an "arriving alien" and therefore ineligible to adjust status under 8 CFR § 245.1(c)(8).

Zheng now appeals from the denial of asylum, withholding of removal and relief under the CAT, as well as the BIA's denial of his motion to remand. He claims that the BIA committed legal error in finding that Zheng is an "arriving alien" prohibited from adjusting his status, and erred in holding that Zheng did not demonstrate a well-founded fear of persecution.[1]

The BIA affirmed the IJ's adverse credibility determination, noting that substantial inconsistencies between Zheng's affidavit and asylum application, and significant contradictions between his testimony and documentary evidence, all concern his wife and children, elements central to his asylum application. Specifically, in his asylum application,

_____

[1] Zheng also argues that his due process rights were violated by the IJ's reliance on statements allegedly prepared by a travel agent but attributed to Zheng. We do not, however, have jurisdiction to consider this constitutional claim, as it was not raised before the BIA. Massieu v. Reno, 91 F.3d 416, 419 (3d Cir. 1996)

Zheng states that he had four children, two of which were given up for adoption, while in his testimony before the asylum officer, Zheng states that two of his wife's pregnancies ended in miscarriage, and she was sterilized after the birth of her second child. Furthermore, it is not until his 1999 statement that Zheng alleges that officials sought to have *him* sterilized, in addition to his wife, and that she went into hiding at her mother's house to avoid insertion of an IUD after her first child was born. The addition of new allegations in later applications "can be viewed as inconsistencies providing substantial evidence that the applicant is not a reliable and truthful witness." Oforji v. Ashcroft, 354 F.3d 609, 614 (7th Cir. 2003) In an attempt to explain these inconsistencies, Zheng alleges in his testimony that his initial application was prepared by a rushed co-worker, and his 1997 application by an ill-informed travel agent. Then, in his 1999 affidavit, he alleged that "his former lawyer" prepared the 1997 statement without reading it back to Zheng before he signed it. The IJ reasonably found these inconsistent explanations unconvincing. Furthermore the registration documents and sterilization certificate provided by Zheng contradicted his testimony and were internally inconsistent, and when asked by the IJ, Zheng provided no satisfactory explanation. Administrative Record, 137-138. Because we conclude that there was substantial evidence to support the BIA's adverse credibility determination, we will affirm.

The BIA's determination that Zheng was an "arriving alien" and therefore ineligible for a status adjustment as per 8 CFR § 245.1(c)(8) is consistent with the regulations. Zheng directs our attention to 8 CFR § 1.1(q) which provides that an alien paroled before April 1, 1997 shall not be considered an "arriving alien" for purposes of section 235(b)(1)(A)(i).

4

However, as the BIA found, although Zheng falls under that exception, it has no effect beyond exempting him from expedited removal under section 235(b)(1)(A)(i). The exception is explicitly limited to that section, and Zheng remains an "arriving alien" with respect to the application of all other sections of the INA. We review this interpretation of the regulations, explicated by the BIA in its opinion, *de novo*, but we give controlling weight to the BIA's interpretation unless it is plainly erroneous or inconsistent with the regulation. Because we conclude that the BIA correctly interpreted the regulations, we affirm their denial of Zheng's request for remand to adjust his status.

_____